**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


UNITED STATES OF AMERICA

v.                                      Case No. 3:08-cr-256-J-32HTS

QUINTIN TYRONNE ANDERSON

_____

### REPORT AND RECOMMENDATION[1]

### I.  Status

     This cause is before the Court on the Motion to Suppress
Physical Evidence (Doc. #23; Motion), filed on September 5, 2008.
The United States' Response in Opposition to Defendant's Motion to
Suppress Physical Evidence (Doc. #28) was filed on September 29,
2008.  An evidentiary hearing was held before the undersigned on
October 1 and 7, 2008.

### II. Testimony

**A.  Deputy Shawn Emert**

     Officer Emert has been employed as a deputy sheriff with the
St. Johns County Sheriff's Office for approximately one and a half
years.  Deputy Emert also works a weed and seed detail, for which

---

     [1]     Specific, written objections may be filed in accordance with 28
U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle
District of Florida, within ten (10) days after service of this document.
Failure to file timely objections shall bar the party from a *de novo*
determination by a district judge and from attacking factual findings on appeal.

his duties include meeting with suspicious individuals and stopping vehicles for traffic infractions.  During the evening of May 2, 2008, while on the weed and seed detail and in uniform, he noticed the cracked windshield of a passing van.[2]  The crack, visible in the remaining sunlight, had developed a spiderweb pattern and appeared to be severe in nature, posing a danger.  Thus, Officer Emert made a u-turn with his marked patrol unit and overtook the vehicle, pulling it over at about 7:25 p.m. for violation of Florida Statute Section 316.610.[3]

Neither Defendant, who was driving the van, nor his passenger, Richard Bailey, was wearing a seatbelt.  As a result, both men were cited for the infraction.  Emert initiated the process of writing a citation to Mr. Anderson at 7:26 p.m., and to the passenger at 7:28 p.m.  Deputy Mike Mickler reported to the scene and was present while the citations were being completed.  Another Sheriff's Office deputy, George Steven Gazdick, arrived while Officer Emert was still packaging the traffic citations.[4]  Emert noticed Gazdick with his dog at his (Emert's) patrol car door. Within roughly one minute of Gazdick's arrival, Emert asked the

---

[2]     The vehicles were at the time traveling in opposite directions at 20 to 25 miles per hour.

[3]     Officer Emert also made reference to a Florida Statute specifically concerning windshields, but he could not supply the citation.

[4]     Packaging means folding the documents and getting them ready to be signed.  At another place in his testimony, though, the officer indicated packaging takes place after the citations are signed.  In any event, the packaging is considered part of the traffic stop.

occupants to leave the van to sign their citations, and additionally so that a canine sniff could be conducted. The dog sniff proceeded while Defendant and the passenger were signing their citations on the hood of Deputy Emert's car.

Within one minute of the sniff's commencement, Officer Gazdick stated there had been a positive alert. At this point, only about five or six (and not more than ten) minutes had elapsed from the time the van was stopped. After the alert, Defendant and Mr. Bailey were instructed to sit on the curb and thereafter Mr. Anderson was placed under arrest.

A fairly thorough search of the van was conducted at the scene. Officer Emert then left with Defendant once the tow truck arrived, by about 8:15 p.m. He drove directly to the St. Johns County jail. A probable cause statement was generated after they arrived at the jail, and subsequently Defendant was booked. The statement had been commenced at 8:29 p.m.

A warning regarding the cracked windshield was written at a later time, after the creation of the probable cause statement. The delay in writing the warning was related to Deputy Gazdick having arrived so quickly at the scene and wanting to conduct a canine sniff.

**B.  Officer Sidney Mickler**

Officer Mickler has worked for the St. Johns County Sheriff's Office for over four years.  Currently, his primary duties are associated with weed and seed.  On May 2, 2008, at around 7:30 p.m., Deputy Mickler heard about a nearby traffic stop over dispatch and traveled to the site.  After arriving, he recognized both the passenger and driver of the stopped vehicle and, aware of their history with drugs, called Deputy Gazdick to the scene. Officer Gazdick, who was six blocks or so away, arrived within about five minutes.  Gazdick approached Deputy Emert's vehicle without his dog.  At the time, Officer Emert was still completing work on the citations.  Following a conversation that lasted less than thirty seconds, the van's occupants were asked to step outside and a canine sniff was undertaken.  The dog alerted to the presence of drugs.  The search itself occurred within about ten to fifteen minutes of Gazdick's arrival.

Deputy Mickler left the scene at maybe 9:00 p.m. or later. Emert had left perhaps thirty or forty minutes earlier.  Officer Mickler testified without having written a report and his estimations of timing were to the best of his recollection.

**C. John Bradley**

Mr. Bradley is a private investigator.  Formerly he worked on homicide investigations for the Jacksonville Sheriff's Office and, prior to that, as a general patrol officer.  He was hired by the

- 4 -

defense to photograph the subject van while it sat in the police impound lot.[5]   In Mr. Bradley's opinion, the windshield cracks caused no more danger, in terms of outward visibility, than that posed by the suspension of items from a rear view mirror.

**D.  George Steven Gazdick**

Employed by the St. Johns County Sheriff's Office as a deputy sheriff since 1999, Officer Gazdick was on duty and accompanied by his police dog on the evening of May 2, 2008.  He came to the scene of the stop at 7:32 p.m., after having been notified of it at 7:25 p.m., and remained in his vehicle for less than one minute after arriving.  Approximately five to ten minutes elapsed from the time he reached the location of the stop to the completion of the canine sniff.  He noticed the windshield of the stopped van bore a very large crack.  Deputy Gazdick did not recall whether citations were being signed while he was present.

### III.  Summary of Argument

Defendant asks the Court to "suppress the .38 caliber revolver and ammunition seized by St. Johns County Sheriff's deputies, from the 1995 Chevrolet Van" he was driving on May 2, 2008.  Motion at 1.  In the Motion, he challenges the initial stop, *see id.* at 3-4,

---

[5]      Four of the photographs taken were received into evidence at the hearing.

the duration of his detention, *see id.* at 4-5,[6] and whether a canine alert provided probable cause.[7]  *See id.* at 5-7.  At the hearing, the government expressed agreement Defendant has standing to challenge the search of the van in that he possessed a reasonable expectation of privacy in regard thereto.

### IV.  Analysis

### A.  Probable Cause for the Stop/Pretextuality

Mr. Anderson claims his "cracked windshield was [used as] a pretext to stop [him] and his passenger and conduct a general search of their vehicle, without probable cause."  *Id.* at 4.

"[L]aw enforcement may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles."  *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998) (internal quotation marks omitted); *see also United States v. Griffin*, 109 F.3d 706, 707 (11th Cir. 1997) (per curiam); *United States v. Jennings*, No. 6:06-cr-120-Orl-31DAB, 2006 WL 2947846, at *2 (M.D. Fla. Oct. 16, 2006). A stop is reasonable under the Fourth Amendment when an officer has probable cause to believe a traffic violation has occurred, even if

---

[6]    During argument, the defense indicated it was not pressing this issue.  Counsel explained the argument had been raised due to having incomplete evidence about the citations issued on May 2, 2008.  However, as the matter was not wholly abandoned, the Court will address it.

[7]    This last issue will be taken up at the continued hearing currently set for October 17, 2008.

it is made as a pretext to search for drugs.  *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").  The Eleventh Circuit has explained:

> [T]he constitutional reasonableness of a traffic stop must be determined irrespective of intent, whether of the particular officers involved or of the theoretical reasonable officer.  The [*Whren*] decision conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred.

*United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) (per curiam) (internal citation and quotation marks omitted); *see also Draper v. Reynolds*, 369 F.3d 1270, 1275 (11th Cir. 2004) (discussing *Whren* and *Holloman*).

In the present case, the stop of the van driven by Mr. Anderson was justified.  "Under Florida law, . . . a crack in the windshield that may obstruct a driver's view [is a] traffic violation[.]"  *United States v. Jennings*, No. 6:06-cr-120-Orl-31DAB, 2006 WL 2947846, at *2 (M.D. Fla. Oct. 16, 2006) (citing Fla. Stat. § 316.610).  Further, it must be remembered "the issue . . . is not whether" Defendant "would have been convicted of [violating the law that prohibits operating a vehicle with a cracked windshield materially impairing a driver's view] in a traffic court.  The issue is whether there was probable cause that a traffic law had been violated."  *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996); *see also United States of America v.*

*Campos-Campos*, 210 F.3d 386, 2000 WL 84370, at *1 (Table) (9th Cir. Jan. 26, 2000) ("Even if the officer had ultimately found the windshield crack to be inconsequential . . . he nevertheless had probable cause to stop the vehicle to investigate[.]").

Here, Deputy Emert offered testimony that he saw severe cracking in the van's windshield that appeared to result in an unsafe condition posing a danger to persons or property. The photographs introduced at the hearing do not undermine this testimony. Government's Exhibit No. 1, for instance, shows a severely cracked windshield including a large starburst-shaped pattern of cracks originating on the driver's side of the rear view mirror. Additionally, there are long cracks extending across the glass at various trajectories.[8] The officer testified that the photograph is a fair and accurate representation of the condition of the windshield as it existed at the time of the stop, and this statement stands unrefuted. Even if under certain light conditions the cracking would be more difficult to detect, there is no convincing evidence that it was invisible to Emert on the evening in question. Observation of a vehicle moving down a sunlit road naturally involves varying angles of reflection. As there is no evidence that conditions on the evening of the stop were such as to prevent the cracks from being perceived, the Court accepts the

---

[8]   Whereas the private investigator offered his opinion that the effects could be equated to those experienced when objects are suspended from a rearview mirror, the photographs reveal otherwise.

deputy's testimony that he in fact saw them and has no trouble concluding he had probable cause to stop the van for an unsafe condition.[9]

**B.  Scope and Duration of Detention Prior to Arrest**

Ordinarily, "an officer's actions during a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (emphasis omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)); *see also United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007).  The duration of a traffic stop may not be "'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." *Purcell*, 236 F.3d at 1277 (quoting *Holloman*, 113 F.3d at 196); *see also Ramirez*, 476 F.3d at 1237; *United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999) (detection of marijuana odor prior to completion of initial investigation justified further detention and questioning of occupant).

---

[9]    At the hearing, defense counsel relied largely upon *Hilton v. State of Florida*, 961 So. 2d 284 (Fla. 2007).  However, that case actually supports the stop under consideration.  The *Hilton* court held "that a cracked windshield violates section 316.610 only if it renders the vehicle in such unsafe condition as to endanger any person or property." 961 So. 2d at 285 (emphasis and internal quotation marks omitted).  As alluded to, the cracks in Defendant's windshield were severe and extensive.  The evidence thus establishes the windshield presented a potentially unsafe condition such that Deputy Emert had probable cause to make the stop.

However, during a stop officers may take reasonable steps in furtherance thereof.  For example, "police officers conducting a traffic stop may 'prolong the detention to investigate the driver's license and the vehicle registration, and may do so by requesting a computer check.'"  *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting *Purcell*, 236 F.3d at 1278).  Additionally, "out of interest for the officer's safety, [it has been] found that officers may permissibly prolong a detention while waiting for the results of a criminal history check that is part of the officer's routine traffic investigation[,]" *id.*, as "long as the computer check does not prolong the traffic stop beyond a reasonable amount of time under the circumstances[.]" *Purcell*, 236 F.3d at 1279.

In the instant case, the testimony establishes Defendant was detained for a brief period of time in connection with windshield and seatbelt violations.  According to Officer Emert, only about ten minutes elapsed from the moment of the stop to the canine sniff.  While there are some relatively minor inconsistencies in the testimony, it is clear the sniff transpired while the traffic stop was still underway.  Therefore, particularly given the reasonable length of that stop, it is found the duration of Mr. Anderson's detention was not enlarged due to the dog sniff and was not longer than was necessary to process the violations.

## RECOMMENDATION

Based on the foregoing, it is recommended the Motion (Doc. #23) be **DENIED** with regard to the issues discussed herein.  The matter of the canine's reliability will, if necessary, be the subject of a future recommendation.

**ENTERED** at Jacksonville, Florida, this 15th day of October, 2008.

/s/      Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE



Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of record
    and pro se parties, if any